450 A.2d 24

**John T. MONTI, Appellant,**

v.

**ROCKWOOD INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1981.

Filed Aug. 20, 1982.

John N. Keller, Waynesboro, for appellant.

Thomas J. Finucane, Chambersburg, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

Truckman John T. Monti purchased from Rockwood Insurance Company a one year business vehicle insurance policy, (hereinafter "policy") for his 1972 International Tractor and his 1977 Fruehauf Trailer (hereinafter collectively "the rig").[1] The policy's coverages included Liability Insurance, Personal Injury Protection and Uninsured Motorists Insurance.

On January 21, 1980, appellant Monti suffered serious bodily injury when the rig, which he was driving, went out of control and overturned on the Ohio Turnpike. When the accident occurred, the rig was leased to Cardinal Transport, Inc., on whose behalf appellant was hauling freight.

Citing the Personal Injury Protection Endorsement in his policy, Monti applied to appellee Rockwood for payment of benefits in excess of $10,000 to compensate him for his medical expenses and other losses arising out of his accident. Rockwood refused payment, asserting that an exclusion in that endorsement relieved it of liability for these charges.

As a consequence of Rockwood's refusal, Monti brought a declaratory judgment action requesting the lower court to find that the policy required payment by Rockwood of all allowable expenses, work loss, replacement services loss and attorney's fees as defined by the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.*

After trial without a jury, the lower court held that the Personal Injury Protection exclusion barred recovery by Monti, and entered judgment for Rockwood.[2] The only issue in this case involves the interpretation of the policy. Be-

1. Appellant was a Pennsylvania resident when he purchased this insurance through Kennett Insurance Services, Inc., Kennett Square, Pa. The policy, entitled Business Auto Policy No. CAP 11268, was effective March 20, 1979.

2. The trial court upheld appellee's position on the grounds that the policy was unambiguous and did not cover appellant's injuries. In reaching this conclusion, the trial court mistakenly considered extrinsic evidence. See *Blocker v. Aetna Casualty and Surety Company,* 232 Pa.Super. 111, 332 A.2d 476 (1975); *Ehrlich v. U.S. Fidelity and Guaranty Co.,* 356 Pa. 417, 51 A.2d 794 (1947).

cause we conclude that the lower court misinterpreted the unambiguous terms of the policy, we reverse and remand.

In interpreting this insurance contract, we are mindful that an insurance policy must be read in its entirety, and its words are to be given their plain and proper meanings. *Ranieli v. Mutual Life Ins. Co. of America,* 271 Pa.Super. 261, 413 A.2d 396 (1979); *Pennsylvania Mfrs.' Ass'n Ins. Co. v. Aetna C. & S. Ins. Co.,* 426 Pa. 453, 233 A.2d 548 (1967). Where the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy. *Adelman v. State Farm Mut. Auto Ins. Co.,* 255 Pa.Super. 116, 386 A.2d 535 (1978); *Great American Ins. Co. v. State Farm Mut. Ins. Co.,* 412 Pa. 538, 194 A.2d 903 (1963). A court should read the policy provisions to avoid ambiguities, if possible, and not torture language to create them. *St. Paul Fire and Mar. Ins. v. U.S. Fire Ins. Co.,* 655 F.2d 521 (3rd Cir. 1981). A court should not rewrite terms of a policy or give them a construction in conflict with the accepted and plain meaning of language used in the policy. *Adelman, supra.*

The policy consists of five documents: (1) the Declarations, summarizing the coverage and limits of the policy (hereinafter "Declarations Sheet"); (2) a document headed "Business Auto Policy" setting forth some of the terms and conditions of the policy (hereinafter "BAP"); (3) an endorsement entitled Basic Personal Injury Protection (hereinafter "P.I.P. Endorsement"); (4) an endorsement entitled "Truckers—Insurance for Non Trucking Use" (hereinafter "Trucker's Endorsement"); (5) an endorsement entitled "Uninsured Motorists Insurance."

The Declarations Sheet lists the "1972 Int'L Trac 40197" (sic) and the "1977 Fruehauf Trlr. 85850," i.e. the rig, as "Covered Autos" under the policy. The Declarations Sheet also lists "Coverages" on the same page, with the benefit limits and the premium paid for each coverage. "Coverages" enumerates Liability Insurance as well as Personal Inju-

ry Protection and Uninsured Motorists Insurance.[3] It is essential to point out that the Declarations Sheet notations concerning limits on Personal Injury Protection refer the reader to one and only one other document, the P.I.P. Endorsement.[4]

The P.I.P. Endorsement states that Rockwood will pay any or all personal injury protection benefits "[i]n accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act, for '(a) medical expenses, (b) work loss, (c) replacement services loss . . .' to an eligible person for bodily injury due to an accident resulting from the maintenance or use of a motor vehicle as a vehicle." (emphasis omitted.)[5] This coverage, however, is subject to certain exclusions which are also set out in the same section of the P.I.P. Endorsement. Exclusion (a) states: "This coverage DOES NOT APPLY to *bodily injury* to: (a) the *named insured* . . . resulting from the use of the *named insured's motor vehicle* which is NOT an *insured motor vehicle*."[6] In other words, a named in-

**3.** Under the heading "Liability Insurance," the Declarations Sheet specifies that the rig is covered in the amount of $100,000/$300,000 BI [Bodily Injury]. $50,000 PD [Property Damage]," at an annual premium of $137.00.

**4.** The Declarations Sheet states that the limit for Personal Injury Protection is "separately stated in each P.I.P. endorsement minus ____ $____ ded. applicable to the named insured and relatives only." (blanks in original).

**5.** The term *"eligible person"* is defined in the endorsement's "definitions" section as, inter alia the *"named insured."* The *"name insured"* is in turn defined as "the person . . . named in Item 1 of the declarations," i.e. appellant.

**6.** The P.I.P. Endorsement contains the following definitions for the italicized words and phrases in Exclusion (a):
*"bodily injury"* or *"injury"* means accidental bodily harm and resulting illness, disease or death . . .
*"named insured"* means the person or organization named in Item 1 of the declarations . . .
*"motor vehicle"* means any vehicle of a kind required to be registered under the Pennsylvania Vehicle Code . . .
*"insured motor vehicle"* means a *motor vehicle* (a) to which the *bodily injury* liability insurance of the policy applies and for which a specific premium is charged and (b) for which the *named insured* maintains security as required under the Pennsylvania No-Fault Vehicle Insurance Act . . . .

sured would not be covered for personal injuries resulting from the use of a vehicle belonging to the insured but not covered for bodily injury liability under the policy.

We note that this exclusion focuses on the identity of the insured vehicle, not on its status for insurance purposes at any particular time or while under any particular use. The exclusion refers to a motor vehicle "*which* is not," and not "*when* it is not," (emphasis added) an insured motor vehicle.

■ The insurer has provided aids in the form of a marginal notation and definitions to assist in the interpretation of this exclusion. These aids confirm that the exclusion focuses on the identity of the insured vehicle, as opposed to its status under any particular circumstances. The marginal explanative notation accompanying Exclusion (a) reads: "*Other autos if not insured under this policy.*" This interpretation is further supported in the P.I.P. Endorsement's definitions section: "*Insured motor vehicle*" is therein defined in pertinent part as a "*motor vehicle . . .* to which the *bodily injury* liability insurance of the policy applies and for which a specific premium is charged . . . . ." Here, the Declarations Sheet sets forth the rig as an insured motor vehicle for the purposes of bodily injury liability insurance with an annual premium of $137.00.[7] It is therefore clear from an analysis of the P.I.P. Endorsement and the Declarations Sheet that the rig is an insured motor vehicle, and Exclusion (a) of the P.I.P. Endorsement does not apply to it.[8]

The plain language of the Declarations Sheet and the P.I.P. Endorsement unambiguously shows that Monti is entitled to the personal injury protections specified in the policy. Read in conjunction with the Declarations Sheet, there is

---

7. On the Declarations Sheet, "Liability Insurance" is differentiated from "Personal Injury Protection." Liability Insurance is further defined in the BAP as coverage for "all sums the insured legally must pay as damages because of bodily injury or property damage . . . caused by an accident and resulting from the . . . use of a covered auto."

We also note that the Declarations Sheet states in two separate places that the rig is a "covered auto" for liability purposes.

8. Appellee relies on no other exclusion in the P.I.P. Endorsement.

nothing in Exclusion (a) of the P.I.P. Endorsement from which the insured might reasonably conclude that Exclusion (a) applied to him when driving his rig. Exclusion (a) specifies that the insured is covered for personal injuries, so long as the accident occurs when he is driving an "insured motor vehicle," i.e. "a motor vehicle . . . to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged . . . ." (P.I.P. Endorsement.) The Declarations Sheet lists the rig as a covered vehicle, with bodily injury liability insurance in a specified amount, and for which a specific premium is charged.

In the final analysis, Rockwood's claim rests on the Trucker's Endorsement. This endorsement states in pertinent part:

LIABILITY INSURANCE for a covered *auto* described in this endorsement is *changed* as follows:

A. The following exclusions are added:

This insurance does not apply to:

1. A covered *auto* while used to carry property in any business.

2. A covered *auto* while used in the business of anyone to whom the *auto* is rented. (emphasis added only for the word "changed.")

The Trucker's Endorsement clearly excludes liability coverage as stated under Liability Insurance on the Declarations Sheet when the rig is being used to carry property in any business. There is nothing on the face of the Trucker's Endorsement to suggest, however, that this endorsement excludes P.I.P. coverage for the insured himself.

Nevertheless, Rockwood argues that the Trucker's Endorsement relieves it of liability. It contends that the Trucker's Endorsement activates Exclusion (a) of the P.I.P. Endorsement under the circumstances of this case. Rockwood correctly asserts that the effect of the Trucker's Endorsement is to exclude liability coverage for bodily injury or property damage to third parties that might have been caused in the accident, when the rig was under lease to Cardinal Transport, Inc., and being used to carry freight in

that company's business. Rockwood next reasons that since, in effect, Monti had no liability coverage for an accident occurring under these circumstances, the insured's rig was "NOT an *insured motor vehicle*" within the meaning of Exclusion (a) of the P.I.P. Endorsement.

For an accident occurring under these circumstances, Rockwood argues, the rig was not a motor vehicle "to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged." (emphasis omitted.) Thus, Rockwood contends that the Trucker's Endorsement exclusion activates an otherwise non applicable exclusion in the P.I.P. Endorsement, and thereby bars appellant's claim for personal injury protection for an accident occurring under the circumstances of this case.

After a careful study of the terms of the policy, we conclude that Rockwood's argument is without merit. Indeed, the policy unambiguously provides P.I.P. coverage for the insured under the circumstances of this case. The Trucker's Endorsement states that the policy does not include liability insurance for the appellant's rig in some situations. Nowhere does it state that the liability exclusion contained therein places the rig, when this exclusion applies, outside the definition of the "insured motor vehicle" contained in the P.I.P. Endorsement.

Further support for this conclusion is found in the prefatory language of the Trucker's Endorsement. It states that liability coverage is "changed," so as not to include injury to third parties under certain conditions.[9] Nowhere in this prefatory statement or any where else in the policy is there language which would lead to the conclusion that liability coverage was suspended and that this suspension would alter the entire scheme of coverage for the insured. The effect of the Trucker's Endorsement is to exclude liability coverage for injured third parties, nothing more. We hold that the rig, in the circumstances of this case, remains an insured

**9.** The verb *"change"* is defined as "to make different in some particular but short of conversion into something else." *Webster's Third New International Dictionary,* 373.

motor vehicle "to which the bodily injury liability insurance of the policy applies and for which a specific premium is charged," even when subject to the liability exclusion contained in the Trucker's Endorsement.

This interpretation is further confirmed by the Trucker's Endorsement's use of the term "covered auto." It does not state that the rig ceases to be a "covered auto," when it is being used "to carry property in any business" or "while used in the business of anyone to whom the *auto* is rented." The Trucker's Endorsement in no way changes, nor does it claim to change the definition of, or the identity of, a covered auto, but rather states that the insurance will not apply to the already defined covered auto under particular circumstances. Thus, the Trucker's Endorsement does not have the effect of altering the statements on the Declarations Sheet which show the rig to be a covered auto for liability purposes.[10]

Giving the words of the policy their plain and ordinary meaning, and applying the definitions contained in the policy, we conclude that the Trucker's Endorsement can not reasonably be read to place the rig outside the definition of "insured motor vehicle" contained in the P.I.P. Endorsement, when the rig is being used for the business purposes specified in the Trucker's Endorsement.

Although we find the insurance contract is unambiguous on the issue at bar, we observe that the meaning of the policy is not readily accessible to the average layman. Indeed, as our analysis indicates, the policy is a morass of endorsements, exclusions, and definitions which are a breeding ground for misunderstandings harmful to both insurers and consumers. Our law does not and should not encourage such unworkmanlike draftsmanship. Indeed, even if we had decided that the policy was susceptible to more than one reasonable interpretation on whether Exclusion (a) applied

10. We further note that although the Declarations Sheet indicates that the Trucker's Endorsement is an endorsement "contained in this policy at its inception," the Declarations Sheet no where suggests that Personal Injury Protection is limited by the Trucker's Endorsement.

to appellant, Pennsylvania law would have required that we resolve the ambiguity in the favor of the insured. *Buntin v. Continental Ins. Co.*, 583 F.2d 1201 (3rd Cir. 1978); *Ranieli supra; Shamey v. State Farm Mutual Automobile Ins. Co.*, 229 Pa.Super. 215, 331 A.2d 498 (1974).

Accordingly, we reverse, relinquish jurisdiction and remand to the lower court for further proceedings not inconsistent with this opinion.

McEWEN, J., files a concurring statement.

McEWEN, Judge, concurring:

I concur in the result. While I embrace the careful and perceptive analysis of the insurance policy by my distinguished and learned colleague and join in the conclusions reached concerning the issue of coverage presently before us, I am hesitant to predict an anticipated result were we confronted with different facts.