

1996 Decisions

8-28-1996

# 12th Street Gym Inc v. Gen Star Indemnity

Precedential or Non-Precedential:

Docket 95-1845,95-1864

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"12th Street Gym Inc v. Gen Star Indemnity" (1996). *1996 Decisions*. Paper 94.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/94

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 95-1845 and 95-1864
_____


12TH STREET GYM, INC; ROBERT GUZZARDI,
                              Appellants at No. 95-1864

                     v.

GENERAL STAR INDEMNITY COMPANY,
                              Appellant at No. 95-1845

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 94-cv-05757)
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 2, 1996

Before:  SCIRICA, ROTH and GODBOLD*, Circuit Judges

(Filed  August 28, l996)


WILLIAM H. BLACK, JR., ESQUIRE
Hecker, Brown, Sherry & Johnson
1700 Two Logan Square
18th and Arch Streets
Philadelphia, Pennsylvania 19103

  Attorney for Appellant/Cross-Appellee,
  General Star Indemnity Company

H. GRAHAM McDONALD, ESQUIRE
Turner & McDonald
1725 Spruce Street
Philadelphia, Pennsylvania 19103

  Attorney for Appellees/Cross-Appellants,
  12th Street Gym, Inc. and Robert Guzzardi



*The Honorable John C. Godbold, United States Circuit Judge for
the Eleventh Judicial Circuit, sitting by designation.

———————————
OPINION OF THE COURT
———————————

SCIRICA, Circuit Judge.

The issue on appeal is whether a liability insurance policy's Sexually Transmitted Disease Exclusion excludes coverage for claims arising out of a gym member's expulsion from a gym due to his Acquired Immune Deficiency Syndrome ("AIDS"). Because we believe the Sexually Transmitted Disease Exclusion is ambiguous, we will vacate the district court's judgment that the exclusion does not bar coverage, and remand for the factfinder to consider extrinsic evidence on the exclusion's meaning.

## I. Background

The plaintiffs, 12th Street Gym, Inc. ("Gym") and its co-owner and president, Robert Guzzardi, brought this action seeking a declaration of their rights under a liability insurance policy issued by the defendant, General Star Indemnity Company ("General Star"). General Star is an excess and surplus lines insurer which provides third-party liability insurance to entities that cannot secure insurance through conventional commercial lines insurers.

The Gym and Guzzardi seek indemnification for the settlement of an underlying suit filed against them by Irving Silverman. Silverman was a Gym member who had been diagnosed with AIDS in 1990. Based on events that took place in the Gym's exercise facility in Philadelphia during February and March of 1994, Silverman sued the Gym and Guzzardi in the United States District Court for the Eastern District of Pennsylvania.

### A.

On February 23, 1994, Silverman approached the Gym management with a suggestion for a special membership option for people diagnosed with AIDS. After submitting his special membership proposal, Silverman was advised by a Gym employee that he would not be allowed to return to the Gym without a note from a doctor. Silverman was permitted to enter the Gym when he returned several days later and presented a note from his doctor stating he was fit to exercise. After exercising, Silverman nicked his finger on a gym locker. He bandaged his cut with a band-aid given to him by a Gym employee, and then showered and dressed in the locker room.

According to Silverman, Guzzardi confronted him in the lobby as he was leaving and demanded to know whether he had AIDS. Guzzardi began yelling until Silverman publicly admitted he had AIDS. After noticing the bandage on Silverman's finger, Guzzardi allegedly shouted: "We don't want your kind in here. You're careless! You could infect everybody!" Guzzardi demanded Silverman leave the gym and told him not to return.

In his complaint Silverman sought damages and declaratory and injunctive relief based on the Gym and Guzzardi's

alleged discrimination in violation of the Americans with Disabilities Act ("ADA"), intentional and negligent infliction of emotional distress, invasion of privacy, fraudulent misrepresentation, civil conspiracy, and defamation.

At the time of the incidents alleged in Silverman's Complaint, the Gym and Guzzardi were named insureds under General Star's policy of general liability insurance, Policy No. IMA 212509. The policy had general provisions providing coverage for four different categories of harm: bodily injury, property damage, advertising injury and personal injury. Attached to the policy was an endorsement that contained the following exclusion:

15. Sexually Transmitted Disease Exclusions (GSI-52-C200)

This insurance does not apply to "bodily injury," "property damage," "personal injury," "professional liability" or "advertising injury" with respect to any claim, suit or cause of action arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS). This exclusion shall apply regardless of the legal form any claim may take. As an example, this insurance shall provide no coverage for a claim alleging that any Insured was negligent or in breach of contract by maintaining premises where the Insured knew, or should have known, diseases might be sexually transmitted.

The Gym and Guzzardi filed a claim for defense and indemnification of the Silverman suit under General Star's policy. General Star declined to defend or indemnify the Gym and Guzzardi due, in part, to the Sexually Transmitted Disease Exclusion ("STDE"). On September 20, 1994, while Silverman's suit was pending, the Gym and Guzzardi instituted this suit in the District Court for the Eastern District of Pennsylvania against General Star. In the complaint, the Gym and Guzzardi sought a declaration that General Star had a duty to defend against the Silverman suit, a duty to indemnify for any judgment entered against them in the Silverman suit, damages in excess of $50,000, and punitive damages.

On December 10, 1994, Silverman died, and his estate was substituted as plaintiff. Subsequently the parties settled the Silverman suit for $35,000 and other nonmonetary relief. The settlement agreement provided for a complete release of all claims against the Gym, Guzzardi and General Star. General Star agreed to pay the defense costs incurred by the Gym and Guzzardi in litigating the underlying action. General Star also advanced the cost of settlement to the Gym and Guzzardi, but reserved its right to contend it was not obligated to indemnify and therefore was entitled to repayment of the $35,000. The Gym and Guzzardi agreed to drop all counts against General Star except for the

claim that General Star had a duty to indemnify for the settlement.  By order entered January 31, 1995, the district court dismissed the Silverman suit.

B.

The Gym and Guzzardi filed an Amended Complaint on February 6, 1995, alleging General Star had a duty to indemnify them for the Silverman suit liabilities.  In its Answer to the Amended Complaint, General Star set forth several affirmative defenses, including one based on the policy's Sexually Transmitted Disease Exclusion.  General Star also counterclaimed for a declaration that it had no duty to indemnify, and for judgment in the amount of $35,000 to reimburse it for the settlement cost.

The parties filed cross-motions for summary judgment.  By order entered June 22, 1995, the district court determined the STDE did not exclude coverage for the remaining claims in the Silverman suit and denied General Star's motion for summary judgment.  But the court also held General Star was not obligated to indemnify the Gym and Guzzardi for Silverman's ADA claim.  In addition, the court determined that the pre-trial settlement of the Silverman suit did not prevent General Star from contesting its obligation to indemnify the Gym and Guzzardi for the settlement of the Silverman action.  Finally, the district court found the facts were insufficiently developed to determine which counts of the underlying complaint, if any, gave rise to liability and coverage.  12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757, slip op. at 2 (E.D. Pa. June 22, 1995).

On September 6, 1995, the parties filed a stipulation in the district court under which General Star agreed to withdraw all affirmative defenses except for the defense based on the STDE.  The district court granted the Gym and Guzzardi's renewed Motion for Summary Judgment based on this stipulation and on its previous holding that the STDE did not bar coverage for the Silverman suit.  12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757 (E.D. Pa. September 5, 1995).

General Star appeals the district court's determination that the STDE does not preclude indemnification for the Silverman suit.  The Gym and Guzzardi cross-appeal from the district court's holding that pre-trial settlement and dismissal of the underlying suit did not require General Star to indemnify for the Silverman settlement.

C.

We have jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.  We exercise plenary review of the district court's grant of summary judgment.  Oritani Savings & Loan Ass'n v. Fidelity & Deposit Co., 989 F.2d 635, 637 (3d Cir. 1993).  The parties agree that Pennsylvania law governs this dispute.  The district court's application and interpretation of state law is subject to plenary review.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557 (3d Cir.), cert. denied, 115 S. Ct. 480 (1994).  Inquiry into the "legal operation" of an insurance policy is a conclusion of law and is also subject to plenary review.  Dickler v. CIGNA Property &

Casualty Co., 957 F.2d 1088, 1094 (3d Cir. 1992); see also Linder v. Inhalation Therapy Services, Inc., 834 F.2d 306, 310 (3d Cir. 1987) (citing Cooper Labs. Inc. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 671 (3d Cir. 1986) (holding judicial construction of an insurance policy to account for events not foreseen by the parties is subject to plenary review)).

## II. Discussion
### A. Duty to Indemnify

General Star is not obligated to indemnify the Gym and Guzzardi for claims that fall outside the general scope of the insurance policy. Accordingly, before we examine the meaning of the STDE, we must determine whether each of Silverman's claims is potentially covered under a reasonable interpretation of the policy.

As we have noted, Silverman alleged seven claims in his first amended complaint: (1) discrimination in violation of the ADA; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) invasion of privacy; (5) fraudulent misrepresentation; (6) civil conspiracy; and (7) defamation. The district court determined General Star is not obligated to indemnify the Gym and Guzzardi for the ADA claim, and this holding has not been appealed. 12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757, slip op. at 2 (E.D. Pa. June 22, 1995).

The insurance policy provides coverage for four categories of harm: bodily injury, property damage, advertising injury, and personal injury. Neither party suggests that Silverman's remaining claims pertain to "bodily injury" or "property damage" as those terms are defined in the policy. Moreover, our review of the policy confirms these claims do not allege harm that could be considered a part of either category. Thus, Silverman's claims are only covered to the extent they allege either "advertising injury" or "personal injury."

The Gym and Guzzardi suggest some or all of Silverman's claims could be considered "advertising injury." The policy defines "advertising injury" in part as injury arising out of:

> a. Oral or written publication of material
> that slanders or libels a person or
> organization or disparages a person's or
> organization's goods, products or services;
>
> b. Oral or written publication of material
> that violates a person's right to privacy . . .
> . .

But there is a limiting definition of "advertising injury." A separate section of the policy states it covers only:

> "[a]dvertising injury" caused by an offense
> committed in the course of advertising your
> goods, products or services . . . .

None of Silverman's claims were for injury caused by an offense committed in the course of advertising goods, products or services. Since the parties do not contend Silverman's allegations were in any way related in an advertisement, the

clear terms of the policy preclude characterizing his claims as "advertising injury."

The remaining category of harm, "personal injury," is defined in the part as:

injury, other than "bodily injury," arising out of one or more of the following offenses:

. . .

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

e.  Oral or written publication of material that violates a person's right of privacy.

(Emphasis added).  The body of the policy provides the insurance applies to all:

"[p]ersonal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you . . . .

Slander and libel are both forms of defamation; slander is defamation by words spoken, and libel is defamation by written or printed material.  Sobel v. Wingard, 531 A.2d 520 (Pa. Super. 1987) (citing Solosko v. Paxton, 119 A.2d 230 (Pa. 1956), and Corabi v. Curtis Publishing Co., 273 A.2d 899 (Pa. 1971)).  In Pennsylvania, "a statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  Kryeski v. Schott Glass Technologies, 626 A.2d 595, 600 (Pa. Super. 1993) (quoting Zartman v. Lehigh County Humane Soc., 482 A.2d 266, 268 (Pa. Super. 1984)), appeal denied, 639 A.2d 29 (1994); see also U.S. Healthcare v. Blue Cross of Greater Phila., 898 F.2d 914, 923 (3d Cir.) (citing Birl v. Philadelphia Elec. Co., 167 A.2d 472 (Pa. 1960)), cert. denied, 498 U.S. 816 (1990).  The court makes the initial determination of whether the statement at issue is capable of defamatory meaning.  U.S. Healthcare, 898 F.2d at 923 (citing Corabi, 273 A.2d at 904).

We think that Silverman's claims for intentional and negligent infliction of emotional distress, invasion of privacy, civil conspiracy and defamation all state potential claims for "personal injury."  All of these claims arose from Guzzardi's accusation that Silverman was "careless" and that "his kind" was not wanted at the Gym.  These statements tended to harm Silverman's reputation and deter third persons from associating or dealing with him.  In addition, Guzzardi's actions may have violated Silverman's right to privacy.  To the extent Silverman's claims allege injuries arising out of the Gym or Guzzardi's slander or publication of material that violated Silverman's right to privacy, the Gym and Guzzardi may be entitled to indemnification for the settlement amount paid to

Silverman's estate.

The district court held the underlying complaint was "based on Irving Silverman's alleged exclusion from the 12th Street Gym -- not on his purportedly having a sexually transmissible disease." 12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757, slip op. at 1 (E.D. Pa. June 22, 1995) (citing First Amended Complaint at ¶¶ 8-35). Although the district court's characterization of the complaint is feasible, it is misleading for the purposes of this case. The Gym and Guzzardi are only entitled to indemnification to the extent Silverman's claims can be considered "personal injury." Exclusion from the Gym, without more, cannot reasonably be construed as slander, invasion of a right to privacy, or any other form of "personal injury" as it is defined in the policy.

On the other hand, the court was correct to point out that Silverman's complaint was not based on his "purportedly having a sexually transmitted disease." Careful review of the complaint reveals that Silverman's allegations were based on the allegation that he had AIDS, without reference to the manner in which he contracted the disease. Since AIDS can be transmitted in a number of ways, only one of which is sexual, it is not accurate to say Silverman's complaint was based on his having a "sexually transmitted" disease. Thus while we reject the district court's conclusion that the underlying complaint was based solely on Silverman's exclusion from the Gym, we adopt the court's alternative determination that "to the extent AIDS was implicated, it was not as a sexually transmissible disease." 12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757, slip op. at 1-2 (E.D. Pa. September 5, 1995).

We now turn to the STDE to examine the extent to which Silverman's claims for "personal injury" may be excluded from coverage by the STDE.

## B. STDE

### 1.

On appeal, General Star argues the STDE unambiguously precludes coverage for the Silverman claims. As we have noted, the STDE precludes coverage for claims:

> arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS).

According to General Star, the district court erred in holding this language is limited to "transmittal of the disease." General Star contends the STDE bars coverage for all claims presented in the Silverman suit because Silverman's disease was so central and integral to the alleged actions of the Gym and Guzzardi that, but for the disease, Silverman would not have a claim.

Emphasizing the extensive scope of the phrase "arising directly or indirectly from," General Star claims it means something broader than normal proximate or substantial factor causation and suggests that "but for" causation is sufficient to trigger the exclusion. Furthermore, the word "involving"

evidences the parties' intent to give the exclusion a broad, all encompassing range.  General Star maintains the language of the STDE is comprehensive and applies to all claims "remotely related" to a sexually transmitted disease, regardless of nature or scope.

In contrast, the Gym and Guzzardi examine the same provision and conclude the STDE was intended to exclude only those claims which allege contraction, exposure, or fear of exposure to sexually transmitted diseases.  They argue the mere existence of a disease that can be sexually transmitted, particularly one that may not have been contracted through sexual activity, is not sufficient to trigger the exclusion.  Instead, the Gym and Guzzardi contend, the exclusion was only intended to prohibit coverage of claims alleging conduct related to sexually transmitted diseases.

In support of this argument, the Gym and Guzzardi cite the following language in the STDE:

> This exclusion shall apply regardless of the
> legal form any claim may take.  As an
> example, this insurance shall provide no
> coverage for a claim alleging that any
> Insured was negligent or in breach of
> contract by maintaining premises where the
> Insured knew, or should have known, diseases
> might be sexually transmitted.

The Gym and Guzzardi claim this example indicates the parties' intent to exclude from coverage only claims alleging the transmission of diseases through sexual activity.  Because Silverman's claims were premised only on the existence of AIDS, and not transmission or exposure to the disease, they maintain the claims should not be excluded from insurance coverage.

In summary, each party examines the language of the STDE and draws opposite conclusions regarding the "clear and unambiguous" language of the provision.

### 2.

Under Pennsylvania law, a court, rather than a jury, generally interprets the language of an insurance contract. Standard Venetian Blind Co. v. American Empire Ins., Co., 469 A.2d 563, 566 (Pa. 1983) (citing Gonzalez v. United States Steel Corp., 398 A.2d 1378 (Pa. 1979) (holding "the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended.") (quotations omitted)).  The goal of insurance contract interpretation is to "ascertain the intent of the parties as manifested by the language of the policy."  Visiting Nurse Ass'n v. St. Paul Fire & Marine Ins., 65 F.3d 1097, 1100 (3d Cir. 1995).  Where the language of an insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning.  Id. (citing Pennsylvania Mfr. Ass'n Ins. Co. v. Aetna Casualty & Surety Ins. Co., 233 A.2d 548, 551 (Pa. 1967)).

After reviewing the language of the policy, we believe the STDE is ambiguous.  Whether an ambiguity exists is a question of law.  Kiewit Eastern Co. v. L & R Constr. Co., 44 F.3d 1194, 1199 (3d Cir. 1995) (citing Hutchison v. Sunbeam Coal Corp., 519

A.2d 385, 390 (Pa. 1986)). Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous. Vogel v. Berkley, 511 A.2d 878, 881 (Pa. Super. 1986). But a contract is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Steele v. Statesman Ins. Co., 607 A.2D 742, 743 (Pa. 1992).

In this case, the STDE is reasonably susceptible to more than one interpretation. First, it is difficult to determine from the contract language alone the parties' intended meaning of the term "sexually transmitted disease." The term is not defined in the policy. It could reasonably be understood to encompass all diseases that could conceivably be sexually transmitted, or it could be limited to diseases that have actually been transmitted through sexual conduct.

Moreover, the language of the STDE does not indicate the intended scope of the exclusion. The STDE could reasonably be understood to exclude from coverage all claims arising indirectly out of allegations involving the existence of a sexually transmitted disease. Support for this interpretation comes from the first sentence of the STDE, which provides in part,

> [t]his insurance does not apply to . . . "personal injury" . . . with respect to any claim . . . arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases . . . .

(emphasis added). As we have noted, the definition of "personal injury" includes injury arising out of:

> oral or written publication of material that slanders or libels a person's or organization's goods, products, or services; or . . . oral or written publication of material that violates a person's right to privacy . . . .

This definition suggests the mere existence of (and reference to) a sexually transmitted disease in an oral or written publication might establish a "personal injury" that is excluded from coverage.

But at least an equally reasonable interpretation of the STDE would limit the exclusion to claims alleging transmission, or fear of transmission, of disease through sexual conduct. Thus "personal" injury may be limited to allegations of actual sexual conduct in an oral or written publication. Moreover, the "mere existence" interpretation of the STDE would virtually eliminate coverage for an extremely broad set of claims. For example, this interpretation might exclude coverage for injuries sustained in a fall caused in part by the weakened physical condition of a person with AIDS. The wide range of claims excluded by the "mere existence" interpretation tends to undermine its validity. Hence, both the "mere existence" and the "conduct or exposure" interpretations have some basis in the text of the policy.

More importantly, the language of the STDE does not clearly reveal the required nexus between a claim and a sexually transmitted disease.  General Star argues the STDE applies to all claims which are even "remotely" related to incidents, occurrences or allegations involving a sexually transmitted disease.  But they also contend the exclusion does not apply if the claim has only an "incidental" or "irrelevant" connection to a sexually transmitted disease.  As we have noted, the district court held, "[t]he underlying complaint is based on Irving Silverman's alleged exclusion from the 12th Street Gym -- not on his purportedly having a sexually transmissible disease." Alternatively, the district court found "to the extent AIDS was implicated, it was not as a sexually transmissible disease." 12th Street Gym, Inc. v. General Star Indemnity Co., No. 94-5757, slip op. at 1-2 (E.D. Pa. September 5, 1995).  Thus the distinction between a "remote" connection and an "incidental" connection to a sexually transmitted disease may be significant in this case.

3.

The Gym and Guzzardi contend the ambiguous language in the STDE should be construed against General Star.  See, e.g., Standard Venetian Blind Co., 469 A.2d at 566 (where the language is ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement").  But a court will only construe ambiguous language against the drafter in the absence of relevant extrinsic evidence.  Hutchison, 519 A.2d at 390-91 n.5.  Under Pennsylvania law, a court determines as a matter of law whether there is an ambiguity.  If so, the factfinder shall resolve the ambiguity. Id. at 390, 391 n.6; see also Peerless Dyeing Co. v. Industrial Risk Insurers, 573 A.2d 541 (Pa. Super. 1990) ("it is the duty of the court to interpret an unambiguous [insurance policy] provision while interpretation of ambiguous clauses may properly be left to a jury") (emphasis in original), appeal denied, 592 A.2d 1303 (1991).

At this stage, the only available extrinsic evidence is an affidavit from the president of the company that underwrote the insurance policy.  The affidavit was submitted by General Star with its Motion for Summary Judgment and states "it was the underwriter's intention to exclude from coverage claims such as those which are stated in [Silverman's complaint] . . . ."  But the affidavit also states "it was not [the underwriter's] intention . . . to exclude coverage for claims in which the involvement of a sexually transmitted disease was irrelevant or purely incidental to the claim . . . ."  In view of this, we do not believe the available extrinsic evidence here is sufficient to resolve the ambiguities in the STDE.  Accordingly, we will remand this matter to the district court.

C.  Pacific Indemnity Co. v. Linn

On the cross-appeal, the Gym and Guzzardi argue the district court erred in denying summary judgment on their claim that the pre-trial settlement and dismissal of the Silverman suit required, as a matter of law, a finding that General Star has a duty to indemnify them for the cost of settling the Silverman

suit.  The Gym and Guzzardi argue that, under our holding in Pacific Indemnity Co. v. Linn, 766 F.2d 754 (3d Cir. 1985), General Star has a duty to indemnify because the Silverman suit was dismissed before Silverman's claims could be confined to those outside the scope of policy coverage.  The district court rejected this argument finding the present case distinguishable from Linn and analogous to Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 674 n.1 (3d Cir. 1986), and Safeguard Scientifics, Inc. v. Centercore, Inc., 766 F. Supp. 324, 334 (E.D. Pa. 1991), rev'd on other grounds, 961 F.2d 209 (3d Cir. 1992) (Table).

In Linn, Pacific Indemnity brought a declaratory judgment action to determine which of several insurers had a duty to defend and indemnify Dr. Linn in suits against him to recover for injuries or death suffered by persons who had read and followed his diet book.  Several of the suits against Dr. Linn were settled by the insurance companies before sufficient facts were developed to determine the basis for Dr. Linn's liability.  Consequently, it was impossible to determine whether the policies provided coverage for the settlement amount.  Because we could not determine which of the injured bookreaders claims would have prevailed, we held "the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause."  Id. at 766.  We observed:

> [t]o reach the opposite conclusion could conceivably result in an insured never being indemnified in a suit that its insurer settles where that insurer defends under a reservation of rights.  In such a situation, it would behoove the insurer to reserve its rights and to settle the suit to avoid both the costs of litigation and, at the same time, the costs of indemnification.

Id. at 766.  Thus our holding was based, in part, on the concern that an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy.

The Gym and Guzzardi argue Linn is analogous to this case because the Silverman suit was settled before the claims were confined to those outside of the scope of the policy.  But unlike the insured in Linn, the Gym and Guzzardi participated and acquiesced in the settlement of the underlying case.  Because the Gym and Guzzardi were not exposed to the risk that influenced the Linn decision, the district court correctly denied their motion for summary judgment.  See Cooper Labs., Inc. v. Int'l Surplus Lines Insurance Co., 802 F.2d at 674 (holding the Linn duty to indemnify rule did not apply to a case settled by the insured) (applying New Jersey law); Safeguard Scientifics, Inc. v. Centercore, Inc., 766 F. Supp. at 334 (same).

### III.  Conclusion

We will vacate the district court's order granting the Gym and Guzzardi's motion for summary judgment.  We will remand

the matter to the district court for proceedings consistent with this opinion.

12TH STREET GYM, INC. v. GENERAL STAR INDEMNITY CO., ET AL
Nos. 95-1845/1864

Roth, Circuit Judge:

The issue in this appeal is the proper interpretation of a Sexually Transmitted Disease Exclusion ("STDE") included in a liability insurance policy. As I read the broadly-worded STDE, it unambiguously excludes from coverage all of the claims in Irving Silverman's Complaint for which the insured, 12th Street Gym ("Gym"), could possibly have been indemnified. I therefore believe that the Gym is not entitled to indemnity for the settlement of any of Silverman's claims. Accordingly, I dissent. I would reverse the district court's entry of summary judgment for the Gym and its co-owner and president, Robert Guzzardi, and enter summary judgment for the insurer, General Star Indemnity Company.

As the majority has explained, Silverman's complaint is based on an incident that took place in the Gym lobby in 1994. After Silverman finished exercising, he nicked his finger on a gym locker. He bandaged his cut with a band-aid, showered, and dressed in the locker room. Silverman alleges that as he was leaving the Gym, he was confronted by Guzzardi. In front of other Gym patrons, Guzzardi demanded to know whether Silverman

had AIDS, and Silverman affirmed that he did.  Noticing the bandage on Silverman's finger, Guzzardi allegedly shouted, "We don't want your kind in here.  You're careless!  You could infect everybody!"  Silverman was thereafter banned from the Gym.

The majority notes that under the insurance policy the Gym would be entitled to indemnity in this case only to the extent that Silverman's claims could be characterized as "personal injury."  Thus, the Gym is entitled to indemnity from General Star only to the extent that Silverman suffered damages as a result of the Gym's slander or the Gym's publication of material that violated Silverman's right to privacy.  I therefore agree with the majority that one of the district court's alternative holdings is flawed.

The district court held that the STDE did not preclude indemnity for Silverman's claims because "[t]he underlying Complaint is based on Irving Silverman's alleged exclusion from the 12th Street Gym -- not on his purportedly having a sexually transmissible disease."  12th Street Gym, Inc. v. General Star Indem. Co., No. 94-5757 (E.D. Pa. Sept. 5, 1995).  If Silverman's claims were based on his exclusion from the 12th Street Gym alone, however, those claims would not be covered under the insurance policy at all.  As the majority demonstrates, the only potentially relevant coverage is for "personal injury," and personal injury, by definition, involves defamation or invasion of privacy, not physical exclusion from the Gym.  Given the relevant insurance coverage, General Star could not possibly be required to indemnify the Gym for claims based only on Silverman's exclusion from the Gym.  Because such a claim would not be covered by the insurance policy to begin with, we need not consider whether it is excluded from coverage by the STDE.

It is in our consideration of the district court's alternative holding that the majority and I part ways.  The district court held that the STDE does not preclude coverage in this case because Silverman's complaint was not based on his "purportedly having a sexually transmitted disease."  The assumption underlying this holding is that the STDE can be read narrowly to exclude from coverage only those claims that allege transmission of a disease through actual sexual conduct, as opposed to excluding from coverage all claims involving the genre of diseases known generally as sexually transmitted diseases (no matter how the disease was transmitted in a particular instance).  I believe that this reading of the STDE is insupportably narrow when read against the exclusion's broad language.

The majority divides its support for this holding into three separate but closely related arguments.  First, the majority makes a textual argument.  In essence, the majority argues that the term "sexually transmitted disease" is inherently ambiguous because it is unclear whether it refers generally to the genre of diseases that may be sexually transmitted or only to diseases that were transmitted by sexual conduct in the particular case at hand.  Second, the majority argues that the STDE fails to indicate the intended scope of the exclusion.  Third, the majority argues that the STDE does not reveal the

required nexus between a claim and a sexually transmitted disease.  I will address these arguments in turn.

Before specifically addressing the majority's arguments, however, I believe that the broad language of the STDE bears repeating in its entirety:

> This insurance does not apply to "bodily injury," "property damage," "personal injury," "professional liability" or "advertising injury" with respect to any claim, suit or cause of action arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS).  This exclusion shall apply regardless of the legal form any claim may take.  As an example, this insurance shall provide no coverage for a claim alleging that any Insured was negligent or in breach of contract by maintaining premises where the Insured knew, or should have known diseases might be sexually transmitted.

App. at 166a.  Thus this extremely broad exclusion precludes indemnification for any claim for "personal injury," even if the injury arose only indirectly from an occurrence or allegation involving sexually transmitted diseases, such as AIDS.

The majority relies heavily on a narrowly-focused textual argument in order to avoid the broad sweep of the STDE.  According to the majority, this case may not "involve" a sexually transmitted disease at all because:

> [c]areful review of the complaint reveals that Silverman's allegations were based on the allegation that he had AIDS, without reference to the manner in which he contracted the disease.  Since AIDS can be transmitted in a number of ways, only one of which is sexual, it is not accurate to say Silverman's complaint was based on his having a "sexually transmitted" disease.  Thus . . . we adopt the [district] court's alternative determination that "to the extent AIDS was implicated, it was not as a sexually transmissible disease."

Slip op. at    [Typescript at 13] (quoting district court opinion).  The majority reemphasizes this argument later by stating that the term "sexually transmitted disease" could be understood to "encompass all diseases that could conceivably be sexually transmitted, or it could be limited to diseases that have actually been transmitted through sexual conduct."  Id. at [Typescript at 16].

The majority's reading of the term "sexually transmitted disease" is unconvincing, given the common usage of that term.  Words of common usage in an insurance policy must be construed in their natural, plain and ordinary sense, Slate Construction Co. v. Bituminous Casualty Corp., 228 Pa. Super. 1, 323 A.2d 141, 145 (1974) (citing Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Ins. Co., 385 Pa. 394, 123 A.2d 413 (1956)), and we should not torture the plain meaning of a writing merely to find an ambiguity.  Monti v. Rockwood Ins. Co., 303 Pa. Super. 473, 450 A.2d 24 (1982); see Techalloy Co., Inc.

v. Reliance Ins. Co., 338 Pa. Super. 1, 487 A.2d 820 (1984).

In common usage, the term "sexually transmitted disease" refers to a genre of communicable diseases, no matter how they are actually transmitted in an individual case (e.g., AIDS is a "sexually transmitted disease," even though it may be transmitted through blood transfusions or the use of contaminated hypodermic needles). Nothing in the context of the STDE indicates that the designation "sexually transmitted disease" should be read to require the occurrence of actual sexual transmission or sexual conduct in each individual case.

An interpretation of the term "sexually transmitted disease" as referring to a genre of diseases as opposed to a singular mode of transmission in an individual case is reinforced by the inclusion of an example of such sexually transmitted diseases at the end of the relevant sentence in the STDE: "involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS)" (emphasis added). In other words, the STDE excludes from coverage any claim arising out of instances or allegations involving the genre of diseases known as sexually transmitted diseases, which includes the disease known as AIDS.

Contrary to the majority's emphasis on actual sexual conduct, the STDE uses sweeping language to exclude from coverage a broad swath of claims "arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases . . .." There is no reference to conduct or sexual conduct anywhere in the STDE. The majority's reading of the term "sexually transmitted disease" to emphasize transmission by sexual conduct is strained on its face, given the accepted meaning of that term. In the context of the entire STDE, the majority's reading is untenable.

The majority also argues that the scope of the STDE is unclear. According to the majority it would be reasonable to limit the STDE "to claims alleging transmission, or fear of transmission, of disease through sexual conduct. Thus 'personal' injury may be limited to allegations of actual sexual conduct in an oral or written publication." Slip op. at    [Typescript at 17] (emphasis added). This argument merely restates in the "personal injury" context the majority's unfounded emphasis on sexual conduct. There is no express mention whatsoever in the STDE of "conduct" or "sexual conduct" in any context.

A straightforward comparison of the STDE and the claim in this case is instructive on this point. The STDE excludes claims for personal injury (i.e., defamation or defamation leading to invasion of privacy) "arising directly or indirectly out of instances, occurrences or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS)." In this case, Silverman nicked his finger on a gym locker and was wearing a band-aid when he was confronted by Guzzardi. Guzzardi allegedly exclaimed that Silverman was careless and "could infect everybody." Based upon Guzzardi's outburst, Silverman alleges a number of causes of action that could be characterized as personal injury under the policy. Silverman's claims for personal injury arise directly from

Guzzardi's allegation that Silverman might transmit AIDS in the Gym.

Under any reasonable interpretation of the word "involving," Guzzardi's allegation involves a sexually transmitted disease and fear of its possible transmission. Silverman's claim arises directly from Guzzardi's utterance, which makes explicit reference to Silverman's AIDS and the possibility that he could infect others. Under the majority's interpretation, Guzzardi's exclamation would apparently have to include some additional reference to sexual conduct. Given the broad language of the STDE, I find that such a narrow reading of its coverage is implausible.

Finally, the majority argues that the language of the STDE "does not reveal a clear nexus between a claim and a sexually transmitted disease." Slip op. at     [Typescript at 18]. The majority is troubled by the STDE's purported failure to define an appropriate nexus because "the distinction between a 'remote' connection and an 'incidental' connection to a sexually transmitted disease may be significant in this case." I disagree. The broadly-worded STDE excludes personal injury from coverage even if the injury arose only "indirectly" from an occurrence or allegation "involving" sexually transmitted diseases, such as AIDS. In this case, the entire sum and substance of Guzzardi's allegedly injurious remarks involved AIDS, Silverman's status as an individuals with AIDS, and the potential that Silverman could infect others in the Gym with AIDS. We could, perhaps, imagine a claim on the margin of coverage where the alleged ambiguity surrounding the word "involving" might come into play. Nevertheless, if the exclusion applies to "personal injury" at all (which it clearly does), this case is in the heartland of those cases that the STDE excludes from coverage.

In the course of its opinion, the majority acknowledges that its interpretation of the STDE is motivated to some extent by a reluctance to carry the STDE to its logical extension. The majority correctly states that the STDE might potentially eliminate coverage "for an extremely broad set of claims." Slip op. at     [Typescript at 18]. There is no reason to assume, however, that the parties did not appreciate the full import of their agreement when they signed it. In fact, it is highly unlikely that General Star and the Gym agreed to the STDE without considering just the sort of claim presented in this case. Before the parties agreed to the STDE, a number of courts had awarded damages and/or non-monetary relief to HIV-positive or AIDS-infected individuals who were illegally excluded from public accommodations or employment. Some of these cases awarded damages for associated emotional pain and mental anguish.

The issue presented in this case was of obvious importance to both parties. The Gym estimates that approximately sixty percent of its members, both male and female, are gay, and that "of the gay population, approximately ten to twelve percent (10-12%) of the membership were either HIV positive or had AIDS in March of 1994." Appellees' Brief at 11. Given the existing case law on the topic and the importance of the issue for the Gym

and for General Star, I see no reason to suppose that the parties did not consider the implications of the broad language employed in the STDE. We should feel no compunction about holding the Gym to the bargain that it struck.

The majority's identification of an ambiguity in the STDE relies heavily on a tortured construction of the term "sexually transmitted disease" to require actual sexual conduct. This narrow interpretation of a key term ignores the normal usage of the words as well as the context in which they are used in the STDE. The underlying claims that give rise to the Gym's only valid claim for indemnification hinge on remarks permeated with references to Silverman's AIDS. Therefore, I would reverse the district court's decision in favor of the Gym, and I would remand this case to the district court for entry of judgment in favor of General Star.