Defendant-appellant, National Union Fire Insurance Company of Pittsburgh, Pa., (hereinafter "appellant") appeals from the declaratory judgment granted in favor of plaintiff-appellee, Waco Scaffolding Company, (hereinafter "appellee"). The appellee filed this action in order to have itself declared an insured under a "wrap-up" insurance policy issued by the appellant. The policy in question was issued to Pennsylvania Convention Center Authority (hereinafter "PCCA") with respect to construction of the Pennsylvania Convention Center Exhibition Building (hereinafter "the project"). The appellee's involvement in the project was limited to providing scaffolding for the use by a subcontractor on the project who was performing masonry work. The appellee filed the within declaratory judgment action after a lawsuit was filed against them by a worker employed by the masonry subcontractor, who was injured when a bracket on the scaffolding failed, causing the scaffolding to collapse.
The essential facts in this case are not in dispute. The PCCA awarded the general contract for the project to Dick Enterprises, Inc. (hereinafter "Dick"). Dick subcontracted with Pompano Masonry Corporation (hereinafter "Pompano") for the performance of certain masonry work required for the project. Pompano entered into an agreement to lease scaffolding from the appellee for work on the project. On December 17, 1991, a masonry laborer employed by the appellee, Victor Velazquez, was injured when he fell from the scaffolding provided to Pompano by the appellee.
Velazquez filed suit against the appellee in the Court of Common Pleas of Philadelphia County, Pennsylvania. The appellee forwarded a copy of the lawsuit to the appellant seeking coverage on the theory that as a subcontractor who performed work on the project, it was a named insured. After the appellant refused to provide coverage to the appellee under the insurance policy issued to the PCCA, the appellee caused the within action to be filed in order that the court could determine its rights under the subject policy.
The subject policy contains the following definition of "insured" for coverage purposes:
Named Insured Endorsement
 In consideration of the premium charged, it is agreed that the named Insured in Item #1 of the Policy Declarations is amended to read as follows, but, for the purpose of giving and receiving notices and the payment or the return of premium, the first-named Insured shall be deemed the only Named Insured.
 All contractors with whom Pennsylvania Convention Center Authority contractually agreed to provide Insurance All tiers of Sub-contractors of such Contractors and as follows;
 Redevelopment Authority of the City of Philadelphia, The Commonwealth of Pennsylvania, The City of Philadelphia, Morse Diesel/Temple, and J. V.
After the trial court had allowed a period of time for the parties to conduct discovery, both the appellant and the appellee filed motions for summary judgment. The trial court granted the appellee's motion for summary judgment and denied the appellant's motion for summary judgment. The trial court specifically found that the above quoted "Named Insured Endorsement" to the policy provided coverage to the appellee for any liability determination arising out of the injuries incurred by Velazquez.
The appellant sets forth two assignments of error which, having a common basis in law and fact, this court will address concurrently:
 I. THE COURT OF COMMON PLEAS ERRED IN GRANTING WACO'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT BECAUSE WACO WAS NOT A SUB-SUBCONTRACTOR AT THE PROJECT, AND THEREFORE NOT AN INSURED UNDER THE POLICY.
 II. THE COURT OF COMMON PLEAS ERRED IN GRANTING WACO'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT BECAUSE EVEN IF THE POLICY IS DEEMED AMBIGUOUS, EXTRINSIC EVIDENCE PROVES THAT WACO WAS NOT A SUB-SUBCONTRACTOR AT THE PROJECT, AND THEREFORE NOT AN INSURED UNDER THE POLICY.
This court reviews a lower court's grant of summary judgment denovo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court.Zaslov v. The May Dept. Stores Co. (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come to but one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993), 67 Ohio St.3d 337. citing toTemple v. Wean United, Inc. (1977)., 50 Ohio St.2d 317, andHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Summary judgment is appropriately entered where the moving party has satisfied each criteria of Civ.R. 56. See Celotex Corp. v.Catrett (1986), 477 U.S. 317, 323.
The parties in this action agree that this court should apply Pennsylvania law in reaching its decision. It is well settled law in Ohio that the law of the state where a contract is entered into governs the interpretation of the contract. Nationwide Mut.Ins. Co. v. Ferrin (1986), 21 Ohio St.3d 43. In Ferrin, the Ohio Supreme Court adopted Section 188 of the Restatement of Law, 2d Conflict of Laws, which states that in determining the applicable law in a given case, the factors which must be taken into account are: the place where the contract was entered into; the place where the contract's negotiations took place; the place of performance; the location of the subject matter of the contract; the parties' place of incorporation; the parties' place of business; and the parties' place of domicile, residence, and nationality.
In the instant case, it is not readily apparent where the underlying contract for insurance was entered into. However, the lawsuit which gave rise to this declaratory judgment action was filed in Pennsylvania, the project was to be completed in Pennsylvania, and the injury suffered by Velazquez occurred in Pennsylvania. The defendant's principal place of business is also in Pennsylvania. Therefore, the vast majority of criteria listed in the Restatement favor the application of Pennsylvania law to the substantive issues presented in this appeal.
Under Pennsylvania law, the court, rather than the jury, generally interprets the coverage of an insurance contract. 12thSt. Gym, Inc. v. General Star Indem. Co. (3rd Cir. 1996),93 F.3d 1158. In interpreting the insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. Riccio v. American Republic Ins. Co.
(1987), 550 Pa. 254, 705 A.2d 422.
The insured bears the burden of proving facts that bring its claim within the policy's affirmative grant of coverage. KoppersCo., Inc. v. Aetna Cas. and Sur. Co. (3rd Cir. 1996),98 F.3d 1440, 1446.
As in Ohio, the words of an insurance policy must be given their plain and proper meaning. Monti v. Rockwood Ins. Co.
(1982), 303 Pa. Super. 473. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. Riccio, supra, 550 Pa. 254, 264, 705 A.2d 422, 426. Mere disagreement between the parties as to the proper interpretation of a contract, does not necessarily render the contract ambiguous. Vogel v. Berkley (1986), 354 Pa. Super. 291.
In the case sub judice, it is not in dispute that the appellee did not furnish any labor at the project; did not furnish any materials which were incorporated into the project; and did not enter into a sub-contract for work on the project with either the general contractor or another subcontractor. The appellee merely provided a scaffolding for use by a subcontractor.
Article 1 of the "General Conditions" issued by the PCCA contained specific definitions of "subcontractor" and "materials." Subcontractor is defined as "any person, firm or corporation, other than the employees of the contractor, who contracts with the contractor to furnish labor or labor and materials under the contract." Materials are defined as "equipment, material, products and articles incorporated in the Work."
Article 13(A) of the General Conditions which was titled "Approval of Subcontractors" states at subsection 5:
 5. No subcontractor shall be permitted to perform Work at the Work site until both the Subcontractor and the Contractor, in compliance with the Contract Documents have furnished to the PCCA (1) satisfactory evidence of all insurance required by the Contract Documents to be maintained by them; and (2) all necessary information in order to effectuate insurance for such person under the PCCA's Wrap-Up insurance program described in Article 8, INSURANCE.
In conjunction with its subcontract with Dick, Pompano filled out a form provided by the PCCA which was titled "REQUEST FOR INSURANCE CONTRACTOR INFORMATION FORM." The form specifically requested "the names and addresses of the firms which will act as your subcontractors" if it was anticipated that some of the work to be done under the contract would be subcontracted. In response to this request for information Pompano provided the PCCA with the name of one second tier subcontractor who would perform some of the work for which Pompano had subcontracted with Dick — "Dan LePore and Sons Company." Pompano did not indicate to the PCCA that the appellee would be performing any work on the project.
Article 25(J) of the General Conditions titled "Contractor Procurement of Materials for Incorporation In the Work," provides in relevant part:
 The provisions of this sub-article J do not apply (1) to materials, equipment and products purchased by the Contractor for its own use, and which will not be incorporated into the Work, including but not limited to concrete formwork, tools, construction equipment, fuel, and the like * * *.
Sub-article J then proceeds to outline fairly comprehensive requirements for the delivery, inspection, payment and removal of those materials provided by contractor and subcontractor which were to be incorporated into the work. There is no question but that the appellee did not follow the dictates of sub-article J in providing scaffolding equipment for the use of Pompano on the project.
In the instant case, the appellee provided an unassembled scaffolding unit for use by a subcontractor on the project. The appellee did not provide any labor on the project, or any materials that were incorporated into the project. The appellee also never submitted any underwriting information in order to effectuate insurance coverage under the policy as mandated by the General Conditions issued by the PCCA. The contract between the appellee and Pompano was merely a lease for the temporary use of the scaffolding. In the lease, the appellee specifically disclaimed all liability for the erection, maintenance, use and operation of the scaffolding equipment. The lease between the appellee and Pompano also failed to incorporate the "Subcontractor's Duties to the PCCA" as required by the General Conditions. The record does not indicate that there was a link of any kind or privity of contract between the appellee and the PCCA. There is simply no evidence to support the appellee's assertion that it was a lower tier subcontractor on the Project.
This court does not believe that the failure of the appellee to take the necessary steps to secure insurance coverage under the wrap-up insurance policy issued by the appellant for the project was mere oversight. Rather, it is indicative of the fact the appellee never considered itself to be a subcontractor on the project until such time as Velazquez brought suit seeking compensation for his injuries sustained when he fell from the scaffolding provided by the appellee.
The appellee maintains that the insurance policy in question is ambiguous in its definition of subcontractor. A provision of an insurance policy is ambiguous if reasonably intelligent persons on considering it in context of the entire policy would honestly differ as to its meaning. Rich Maid Kitchens, Inc. v. Pa.Lumberman's Mut. Ins. Co., 641 F.2d 297 (E.D. Pa. 1986). Under Pennsylvania law, the court determines as a matter of law whether there is any ambiguity in an insurance policy; if so, the fact finder shall resolve the ambiguity. 12th St. Gym v. General StarIndem. Co., 93 F.3d 1158, (C.A.3 (Pa.) 1996). In making the determination of whether language is ambiguous, courts must generally give words and phrases their plain, ordinary, natural or commonly accepted meaning. Gomalka v. State Auto. Mut. Ins.Co. (1982), 70 Ohio St.2d 166, 167-168; Monti, supra. The plain, ordinary and natural meaning of "Sub-contractors" as used in the Named Insured Endorsement to the policy does not include entities who merely provide tools or equipment to subcontractors pursuant to a rental agreement, for temporary use during the project. Under the appellee's expansive definition of sub-contractor, the number of covered parties under the insurance policy would be nearly endless, given the size of this project. Every manufacturer or distributor who provided any tools or equipment used in the project to the general contractor or to a subcontractor would themselves become a subcontractor and, thereby, a named insured.
This court finds persuasive the decision of Supreme Court of New York, Appellate Division in Higgins Erectors Haulers, Inc.v. Niagra Frontier Transp. (1988), 529 N.Y.S.2d 654, 655, wherein the court reasoned:
 * * * In the construction industry the words contractor and subcontractor have a special meaning. They are distinguished from a "supplier" or a "deliveryman." Under the Lien Law applying to construction contracts, the terms contractor and subcontractor apply only to those engaged in the performance of the construction work. (Lien Law Sec. 2). Under the standard form of contract prepared by the American Institute of Architects, widely used in the construction industry, a subcontractor is one "who has a direct contract with the Contractor to perform a portion of the Work at the site." (Architect's Handbook of Professional Practice, AIA Document A 210, Sec. 5.1.1 [1976]). With regard to construction contracts, "[s] ubcontractor has a well defined meaning * * * and as used in its technical sense it means one who takes from the principal contractor a specific part of the work, and does not include laborers or materialmen." (17 CJS, Contracts, Sec. 11). Id. at 655.
The Higgins decision recognizes that the term subcontractor does not apply to those entities who do not perform work on the project, but merely provide materials to those who do perform the construction work. This is consistent with not only the industry usage of the term, but, also, with its common and ordinary understanding. Therefore, this court holds that, as a matter of law, the wrap-up policy issued by the appellant was not ambiguous, and that the appellee was not a named insured under the subject insurance policy. The appellant's assignments of error being well taken, this case is reversed and remanded to the trial court with instructions to enter judgment in favor of the appellant in accordance with this opinion.
This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee its costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMONAGLE, TIMOTHY E., P.J., and SWEENEY, JAMES D., J.,CONCUR.
 _________________________________ MICHAEL J. CORRIGAN JUDGE