## Styer v. Nationwide Mutual Insurance Company

*Joseph Goldberg,* for plaintiff.
*William B. Moyer,* for defendant.

BIESTER, JR., *J.,* May 18, 1983—On March 4, 1983, the undersigned entered the following

### ORDER

"AND NOW, this 4th day of March, 1983, it is hereby Ordered, Directed, and Decreed that plaintiff's Motion for Judgment on the pleadings is granted as to his prayer for reimbursement for expenses incurred defending Civil Action No. 81-3019 in United States District Court for the Eastern District of Pennsylvania and for expenses incurred in filing

this motion. Defendant has a continuing duty to defend the insured on the constitutionally based tort claim. Plaintiff's motion for punitive damages is denied."

From that order, defendant now appeals.

This action arises out of the suit to which reference was made in our order of March 4, 1983. Therefore, a brief explanation of the facts of that case is appropriate.

On October 19, 1979, plaintiff in that case, Harry Accardi, and his wife were in Mr. Styer's store. While his wife was purchasing various items from the store, Mr. Accardi placed them in his car. However, as he was doing so, an employee of the store arrested and detained him on an accusation of shoplifting. As his wife could not be found to corroborate his denials, the employee took him to the township police station where the procedures of the arrest were completed. After the arrest was completed, Mr. Accardi returned with his wife to Mr. Styer's store, where Mrs. Accardi was able to prove that Styer's employee was mistaken and that she had properly purchased the merchandise in question.

A dispute then arose as to the litigation. Mr. Styer refused to drop the prosecution of the criminal matter and Mr. Accardi refused to waive his right to bring a civil action against Mr. Styer. Accardi subsequently sued Styer in an action, styled Accardi v. Styler, Civil Action No. 81-3019 which is now pending in the Federal Court of the Eastern District of Pennsylvania. Defendant requested the assistance of counsel from his insurer, the Nationwide Mutual Insurance Company to defend the action by letter dated August 5, 1981. This was pursuant to his understanding of his liability policy. At least two other letters were written by Mr. Styer's lawyers to the defendant insurance company pointing out, in their

opinion, its legal obligation to defendant Mr. Styer in the federal case. Defendant has declined to defend Styer in that action.

Therefore, Mr. Styer brought this declaratory judgment action to require Nationwide to defend the case for him or to provide sufficient compensation for the costs of defending the suit.

It is well settled in this Commonwealth that the question of whether an insurance company must defend its insured and the scope and the extent of that defense turn on whether within the complaint there is stated a cause of action which has the potential of coming within the scope of the policy's coverage. See Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959) and Seaboard Industries Inc. v. Monaco, 258 Pa. Super. 170, 392 A.2d 738 (1978). Therefore our inquiry must focus on the nature of the complaint and we must study the contract carefully to determine the parameters of its coverage.

The complaint in the case of Accardi v. Styer details the course of events we related above. Count I of the action raises a claim of the violation of Mr. Accardi's civil rights pursuant to an alleged conspiracy between Styer and police authorities, seeking relief under 42 U.S.C. 1983, Act of April 20, 1871, §1, 17 Stat. 13. The second and third counts are claims pendant to the civil rights action, which therefore, are properly raised in the federal action. The second count alleges various personal injuries suffered by Mr. Accardi as a result, inter alia, of that conspiracy and in the third count Mrs. Accardi alleges that she lost the services, society, and consortium of her husband.

Count II, which alleges injuries caused by Mr. Styer, alleges, in part, that:

28. In fact, the plaintiff because of the aforesaid outrageous conduct, suffered such severe emotional distress, mental suffering and mental anguish, nervous *shock*, fright, horror, grief, shame, humiliation and embarrassment.

.   .   .

Wherefore, as a direct and proximate result of the aforesaid acts by the three defendants:

(a) Plaintiff suffered the following: physical, *mental* and emotional pain, *injury* and anguish;

(b) Plaintiff suffered and is still undergoing humiliation and embarrassment (sic) in his community and among his friends and neighbors and will continue to suffer same in the near future;

(c) Plaintiff has been and will be required to pay medical and psychological counseling expenses;

(d) Plaintiff was required to pay counsel fees in order to redress the injuries above stated. (Complaint, C.A. 81-3019, E.D.P., pp. 5-6) (Emphasis supplied.)

These alleged injuries would appear to be covered by Item 1 which appears on page 2 of the insurance contract:

1. Coverage. The company will indemnify the insured for all sums which the insured shall become legally obligated to pay . . . by reason of liability imposed upon the Insured by law . . . of (a) personal injury . . .

The term "personal injury" is defined in the insurance contract as:

1. bodily injury, sickness, disease, disability or shock, including death arising at any time therefrom, or, if arising out of the foregoing, mental *anguish* and mental *injury*. (See page 4, section on definitions, eleventh definition) (Emphasis added.)

The coverage for personal injury is subject, however to the following exclusion, titled "Endorsement 104":

"It is agreed that, except insofar as coverage is provided to the insured in the underlying insurance as set forth in the Schedule of Underlying Insurance, this policy does not apply to liability arising out of the following offenses:

(1) False arrest, detention or imprisonment, or malicious prosecution:

\*       \*       \*

(4) Discrimination, humiliation and mental *anguish.*"

In analyzing these provisions of the complaint and insurance policy, we find that Endorsement (104)(1) absolves Nationwide of any responsibility to defend Mr. Styer on the claim of false arrest or malicious prosecution but not on the claim of violation of civil rights under 42 U.S.C. 1983 and we further find that the policy does make the company responsible for the defense of Mr. Styer with respect to certain of the personal injuries alleged in Count II which Accardi alleges were caused, inter alia, by his deprivation of civil rights.

We note that in Count II of the complaint, plaintiff alleges injury in the nature of *shock* and *mental injury*. Both are included in the definition of "personal injury" in the coverage section of the contract. The other allegations in the complaint are either not included in the definition of "personal injury" or are specifically excluded by Endorsement 104(4), (i.e., humiliation and mental anguish). Therefore Nationwide has a contractual obligation to defend Mr. Styer on the allegations of shock and consequent mental injury.

The exclusion language of 104(4) specifically refers to a certain character of unpleasant experience.

The words are discrimination, humiliation and mental anguish. Since the exclusion must be read carefully against the coverage, we must note that the term "personal injury" included in its definition both mental anguish and mental injury. That coverage paragraph obviously was prepared by, controlled by, and is the product of the insurer. It demonstrates quite clearly, and without any question that the insurer drew a distinction between mental anguish and mental injury and properly so. Mental injury is a far more severe and significant harm than is mental anguish. When the exclusion was written, only mental anguish was specified as excluded and thus mental injury remains in the classification of covered responsibilities.

We note that "mental injury" is defined in University of Pittsburgh v. Perlman, 49 Pa. Commw. 347, 405 A.2d 1051 (1980), and "mental anguish" is discussed in Banyas v. Lower Bucks Hospital, 298 Pa. Superior Ct. 122, 437 A.2d 1236 (1981). The respective definitions, set forth in these two cases specify that mental injury indicates a clear illness or condition, which in the Perlman case was irrational behavior leading to suicide, while mental anguish describes suffering of depression. The courts of this Commonwealth have held that while the former can give rise to a cause of action the latter cannot.

The allegations of Count II allege, inter alia, that plaintiff suffered ". . . mental . . . injury and anguish." Also in the allegations of Count II Accardi alleges that he suffered, inter alia, ". . . nervous shock . . . ." Once again by reference to the definition of personal injury in the contract we find that shock is defined as a personal injury and if the mental injury arises out of the shock, such mental injury would be included within the ambit of coverage.

The track of coverage is therefore as follows: Accardi alleges deprivation of Constitutional rights and suffering as a result therefrom nervous shock and mental injury.

The coverage of the policy excludes false arrest and malicious prosecution but not deprivation of Constitutional rights.

Liability imposed upon the insured on account of violation of Accardi's civil rights would be liability "imposed by law". It is liability because of certain forms of personal injury as defined in the policy but not specifically excluded in the policy. The coverage of the policy includes shock and mental injury arising out of shock. The exclusion excludes mental anguish but does not exclude mental injury. We have noted the insurer's recognition of a distinction between the two.

To the extent that the underlying action is an action for false arrest or malicious prosecution, defendant insurer does not have an obligation to defend. But that action is more than a simple action for false arrest or malicious prosecution. That suit is an action alleging, inter alia, a conspiracy between the insured and public officials to deprive Mr. Accardi of his Constitutional rights under the Fourteenth and other amendments of the Constitution of the United States, and is brought under Federally authorized relief. It is an action brought in Federal Court based on alleged violation of Federally guaranteed rights. We find that it is the responsibility of the insurer to defend its insured with respect to those constitutional claims.

Defendant urges upon us that the definition of the word "occurrence" means an accident and therefore excludes any and all deliberate and intentional conduct. Arguing that a conspiracy to deprive the plaintiff in the underlying case of his constitu-

tional rights necessarily involves deliberate or intentional conduct rather than negligent or accidental circumstances, the defendant insurer in this case seeks to avoid any obligation to defend. However, as one looks at page 4 of the policy, the definition of the word "occurrence" occurs just prior to the definition of the word personal injury. The two appearing together in direct juxtaposition read as follows:

"Occurrence means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected or intended from the standpoint of the insured."

"Personal injury means (1) bodily injury, sickness, disease, disability or shock, including death arising at any time therefrom, or, if arising out of the foregoing, mental anguish and mental injury; (2) false arrest, false imprisonment, wrongful eviction, wrongful detention, or malicious prosecution; (3) libel, slander, defamation of character, humiliation, or invasion of the rights of privacy, unless arising out of advertising activities."

As one reads the definition of personal injury, one notes the inclusion of several torts which very frequently partake of deliberate or intentional actions such as false arrest, false imprisonment, wrongful detention, malicious prosecution, libel, slander and others. While one could argue that certain of those could occur by some accidental means, certainly malicious prosecution could not. The juxtaposition of the two definitions clearly demonstrates an ambiguity at the very least and that ambiguity must of course be resolved against the insurer and in favor of the insured. We therefore find the insurer's contention that the definition of the word "occurrence"

means only an unintentional or accidental act cannot be sustained in light of the ambiguity created by conflicts between the two definitions of "occurrence" and "personal injury".

We do not believe that our reading reflects an unintended interpretation of the policy. A close reading of the policy reveals that in these and in its other sections it is carefully worded. The special typewritten endorsement specifically excludes certain language of the printed contract. It is tightly drawn, and could easily have excluded more of the standard policy had that been the intent of the parties. In reading the text of the agreement we cannot give anything but precise meaning to the language used, for to do otherwise would be to engage in mere speculation. See e.g., Monti v. Rockwood Insurance Co., 303 Pa. Super. 473, 450 A.2d 24 (1982). Therefore, we can only accept as correct the clear import of the words as they are written. This is the only way this court can give any true meaning to the contract, as is our responsibility in this declaratory judgment action.

We are also constrained to come to this conclusion because the courts of this Commonwealth have held consistently that an insurance contract must be interpreted to the benefit of the insured where the contract is unclear or ambiguous. See, Mohn v. American Casualty Co. of Reading, 458 Pa. 576, 326 A.2d 346 (1974). While we believe that the language here is clear if read carefully, this rule of construction aids us in our analysis of the import of the word "occurrence". Therefore, as the constitutionally based tort claim is based on allegations the coverage of which are guaranteed by the insurer, we rule that as a matter of law, Nationwide has a duty to defend Mr. Styer to the extent of that coverage.