NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2602
_____

GREEN TREE COMMUNITY HEALTH FOUNDATION,
Appellant

v.

ADMIRAL INSURANCE CO
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-21-cv-03137)
District Judge: Honorable Timothy J. Savage
_____

Argued on June 14, 2023

Before:  PORTER, FREEMAN and FISHER, *Circuit Judges*.

(Filed: August 22, 2023)

Arthur R. Armstrong    [**ARGUED**]
Flaster Greenberg
1717 Arch Street, Suite 3300
Philadelphia, PA 19103

Daniel C. Epstein
Flaster Greenberg
1810 Chapel Avenue W
Cherry Hill, NJ 08002
        *Counsel for Appellant*

Steven Cantarutti    [**ARGUED**]
Michael Hrinewski
Karen H. Moriarty

Coughlin Midlige & Garland
350 Mount Kemble Avenue
P.O. Box 1917
Morristown, NJ 07962
    *Counsel for Appellee*

―――――――

OPINION[*]

―――――――

FISHER, *Circuit Judge*.

Green Tree Community Health Foundation agreed to indemnify the owners of

Chestnut Hill Hospital for medical malpractice claims. But when Green Tree sought

coverage from its insurer, Admiral Insurance Company, for a malpractice claim that

occurred at the Hospital, Admiral denied coverage because of a prior acts exclusion in

Green Tree's policy. The exclusion bars coverage for claims previously reported to

another insurer. The District Court agreed with Admiral that the exclusion applied. We

will affirm.

I.[1]

Chestnut Hill Hospital, a non-profit community hospital, was owned and operated

by Chestnut Hill Healthcare ("CHHC") until 2005, when CHHC sold the Hospital. Under

―――――――――――

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

2

the Contribution and Sale Agreement ("CASA"), CHHC agreed to defend and indemnify the purchasers of the Hospital ("Hospital Purchasers") against "claims or potential claims for medical malpractice or general liability relating to events asserted to have occurred prior to" the 2005 sale. App. 58. Hospital Purchasers are for-profit entities, so they did not acquire the charitable and restricted assets of the Hospital. Some of those charitable and restricted assets were transferred to Green Tree, a "not-for-profit, public charity." App. 36. Green Tree was created during the Hospital's sale specifically to acquire the Hospital's charitable funds. In 2008, pursuant to an Assumption Agreement, Green Tree assumed CHHC's obligation to indemnify Hospital Purchasers against medical malpractice claims relating to events that occurred before March 1, 2005.

In 2011, Green Tree purchased insurance coverage under an Incurred But Not Reported Policy ("IBNR Policy") from Admiral. The IBNR Policy insured medical malpractice claims that occurred at the Hospital between March 1984 and March 2005, so long as the "Claim is first made against the Insured and reported" to Admiral. App. 258. But under a provision entitled "Prior Acts," Admiral did not provide coverage for "any Claim that was reported to any other insurer" prior to October 1, 2011. App. 259. The IBNR Policy defines a "Claim" as "the filing of a lawsuit against an Insured, written notice of intent to file a lawsuit, or to arbitrate against an Insured, or a written demand for money or services communicated to an Insured with respect to a Loss Event." App. 275. A "Loss Event" is a "Medical Incident," which is an injury caused by medical

3

malpractice at the Hospital. App. 277. Green Tree is the only named "Insured" in the

IBNR Policy. App. 258.

A 2019 lawsuit precipitated the matter before us. T.L. Anderson and her mother

sued several entities, including the Hospital, for birth-related injuries T.L. sustained at the

Hospital. The allegations were similar to a medical malpractice suit Anderson's mother

brought in 2002 against the Hospital that was dismissed for failure to prosecute. When

Anderson sued the Hospital in 2019, Hospital Purchasers sought indemnification from

Green Tree pursuant to the Assumption Agreement.[2] Green Tree then tendered the suit to

Admiral, who determined Anderson's 2019 suit was not covered by the IBNR Policy

because of the Prior Acts Exclusion. In Admiral's view, the 2019 Anderson suit was

excluded from coverage because CHHC had reported the 2002 Anderson suit—involving

similar claims as the 2019 suit—to its insurer at the time. So Green Tree sued Admiral,

alleging breach of contract and seeking a declaratory judgment that Admiral must

indemnify Green Tree.

The District Court granted Admiral summary judgment, holding Admiral had no

duty to indemnify Green Tree in the 2019 Anderson suit. Even though the 2002 Anderson

suit was against the Hospital rather than Green Tree—the latter being the sole named

"Insured" under the Prior Acts Exclusion—the District Court held the 2002 suit was an

---

[2] Plaintiffs in the 2019 Anderson suit filed an amended complaint adding Green Tree as a defendant.

excluded "Claim" previously reported to another insurer under the IBNR Policy. The Court reasoned that the prior "claim was made against Green Tree's predecessor whose liability Green Tree assumed," and the IBNR Policy (and exclusions) extended to malpractice claims that arose prior to Green Tree's assumption of the Hospital's liability obligations. App. 9. Applying its interpretation of the contract, the District Court concluded that the Prior Acts Exclusion barred coverage of the 2019 suit. The 2019 suit involved the same "Loss Event" (T.L.'s birth) as the 2002 suit, and the Hospital previously reported the 2002 suit to its insurer. Green Tree appeals.

## II.[3]

We must determine whether the District Court erred in granting summary judgment.[4] Ultimately, we agree with the District Court and conclude that the Prior Acts Exclusion bars coverage of the 2019 Anderson suit.

## A.

The parties agree Pennsylvania law applies, and we begin our analysis by reciting the rules of contract interpretation. The goal of insurance contract interpretation is "to

---

[3] We review a district court's grant of summary judgment de novo, including its conclusions "regarding the legal operation of the insurance contract." *Dickler v. CIGNA Prop. & Cas. Co.*, 957 F.2d 1088, 1094 (3d Cir. 1992); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014), *cert. denied* 575 U.S. 950 (2015).

[4] "Summary judgment is only appropriate when, after consideration of the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact remains in dispute and the moving party is entitled to judgment as a matter of law." *Twp. of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 117 (3d Cir. 1997); *see also* Fed. R. Civ. P. 56(a).

ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citation omitted). To do so, "we do not analyze insurance contract terms in isolation" but "must take into account the entire contractual provision at issue." *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 172 (Pa. 2005).

If a policy provision is clear and unambiguous, then we give effect to its plain and ordinary meaning. *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). But if a policy provision is ambiguous, we construe the provision "in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr. Co.*, 735 A.2d at 106 (citation omitted). A policy is ambiguous "if [it is] subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.* But we will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity," *id.*, and "there is no ambiguity if one of the two proffered meanings is unreasonable," *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009). "A contract is not rendered ambiguous merely because the parties disagree upon its construction." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. 2000).

## B.

Green Tree faults the District Court's interpretation of the IBNR Policy, asserting the District Court impermissibly "modif[ied] the plain meaning of [the Prior Acts Exclusion], under the guise of interpretation," *Best v. Realty Mgmt. Corp.*, 101 A.2d 438,

6

440 (Pa. Super. 1953), when it ignored the definition of a "Claim." Green Tree contends the Exclusion cannot apply because a "Claim" only covers "a lawsuit against an *Insured*." App. 275 (emphasis added). And because the Policy only names Green Tree as the "Insured," the argument goes, the 2002 Anderson suit against the Hospital is not a "Claim" under the Prior Acts Exclusion.

Green Tree is wrong. The Prior Acts Exclusion excludes coverage for "any Claim that was reported to any other insurer" prior to October 1, 2011. App. 259. The Policy defines a "Claim" as "the filing of a lawsuit against an Insured . . . with respect to a Loss Event." App. 275. And a "Loss Event" is a "Medical Incident," which is an injury caused by medical malpractice. App. 277. Applying those clauses and definitions, the 2019 Anderson suit fits the bill for exclusion. The Hospital reported the 2002 Anderson suit to its insurer. And the 2002 Anderson suit involved the same "Loss Event" or "Medical Incident" as the 2019 Anderson suit. Thus, Admiral need not cover Green Tree for the 2019 Anderson suit.

That the 2002 Anderson suit was against the Hospital and reported by CHHC, as opposed to against and reported by Green Tree, does not change our conclusion. Green Tree disregards the parties' intent in creating the IBNR Policy, which can be inferred from the Policy's plain language: the parties intended to insure Green Tree against medical malpractice suits whose "Medical Incident" occurred at the Hospital between 1984 and 2005. It matters not that Green Tree did not exist prior to 2005 or that it did not

7

assume indemnity obligations until 2008. We know this because when CHHC sold the Hospital, it agreed under the CASA to indemnify Hospital Purchasers for medical malpractice claims prior to 2005. And when Green Tree signed the 2008 Assumption Agreement, it agreed to be on the hook for all of those same medical malpractice claims. So while no one is suing Green Tree for injuries it allegedly caused, Green Tree steps into CHHC's shoes by assuming liability for suits CHHC previously covered and reported.[5] Although the 2002 Anderson suit may not have been against Green Tree in fact, we will treat a suit against the Hospital or CHHC as a suit against Green Tree for the purpose of the Policy's coverage and exclusions.

If we read the Prior Acts Exclusion as Green Tree urges—that only suits filed against and reported by Green Tree can be excluded—the exclusion will only apply to a small amount of "Claims." Specifically, only "Claims" made between 2008—when Green Tree assumed liability under the Assumption Agreement—and 2011—when Green

---

[5] The dissent argues Green Tree's indemnity obligations are limited to claims that CHHC previously agreed to indemnify, and the 2002 Anderson suit did not require CHHC to indemnify the Hospital Purchasers. But looking at the CASA, CHHC agreed to indemnify Hospital Purchasers for "any of the Excluded Liabilities," App. 109, which includes any "claims or potential claims for medical malpractice or general liability relating to events asserted to have occurred prior to" the 2005 sale, App. 58. So the "specific form of potential liability" Green Tree assumed from CHHC was for claims whose "Medical Incident" occurred prior to 2005, like the 2002 Anderson suit. Dissent Part II.B. And because the IBNR Policy excludes coverage for a "Claim," i.e., a "Medical Incident" previously reported to another insurer, the 2002 Anderson suit constitutes a previously reported "Claim."

Tree entered into the IBNR Policy—could be excluded under the Prior Acts Exclusion.[6] This seemingly contradicts the intent of the IBNR Policy because all "Medical Incidents" for which Green Tree assumed liability occurred between 1984 and 2005. Green Tree was not in existence when the 2002 action commenced, so it was impossible for Green Tree to have been named in the suit or to have reported the action to an insurer. Thus, the applicability of the Prior Acts Exclusion clause cannot be conditioned on an entity formed in 2005 being a named party to the suit.

The parties also dispute whether the IBNR Policy is illusory under Green Tree's interpretation of excluded "Claims." The District Court stated Green Tree's interpretation of the Policy "would render it illusory. How else would a malpractice claim come within the [P]olicy?" App. 9. At oral argument, Green Tree stated the District Court's illusory comment referenced whether a demand for indemnity was a "Claim" under the Policy. Whether the IBNR Policy fits under Pennsylvania's definition of "illusory"—and whether Green Tree was correct at oral argument—does not matter for our purposes because Green Tree's interpretation is incongruous. It is contradictory for Green Tree to argue that the Prior Acts Exclusion does not apply here because the 2002 suit was not

---

[6] Green Tree did not make this argument in its briefing, conceding its interpretation of the Policy essentially nullifies the Policy's effect. To support its interpretation, Green Tree points to other IBNR Policy exclusions that will also never apply. However, we assume that parties include contractual provisions for a reason and "effect must be given to all provisions in the contract." *See Commonwealth v. Manor Mines, Inc.*, 565 A.2d 428, 432 (Pa. 1989).

against Green Tree, but, on the other hand, coverage is triggered for medical malpractice claims that occurred at the Hospital before Green Tree even existed simply because Green Tree assumed liability. The District Court did not err in concluding that a "Claim" under the Prior Acts Exclusion includes suits filed against the Hospital before Green Tree contractually assumed indemnity obligations.

## C.

Green Tree claims the District Court made two more errors that contributed to its misinterpretation of the IBNR Policy. First, Green Tree argues that the Court misstated its relationship to the Hospital, and second, that the District Court erroneously concluded the 2002 Anderson suit involved the same "Claim" as the 2019 Anderson suit. We disagree.

According to Green Tree, the District Court contradicted the undisputed record when it stated that Green Tree "acquired" and "took over" the Hospital because the Hospital was not its "predecessor." App. 4, 9. Green Tree contends the District Court compounded this error by finding "Green Tree assumed the [H]ospital's indemnity obligations" because Green Tree contractually indemnified *Hospital Purchasers*. App. 4.

It is unclear how Green Tree's argument conclusively shows the District Court improperly granted summary judgment. Even if Green Tree is correct that the Hospital is not its predecessor, stating so was not misinterpreting the IBNR Policy. Under the Assumption Agreement, Green Tree accepted CHHC's obligations to indemnify Hospital

10

Purchasers. And Hospital Purchasers will be named in suits alleging malpractice at the Hospital because they are now its owners. So there is no meaningful distinction between stating Green Tree indemnified the Hospital or Hospital Purchasers. If Green Tree had not assumed liability, a successful plaintiff would force Hospital Purchasers to pay for injuries that occurred at the Hospital, even before their tenure as owners. And the District Court did not state that Green Tree is now the owner of the Hospital, nor that it assumed other obligations on the Hospital's behalf. Instead, it referred to the Hospital as "Green Tree's predecessor" for liability purposes. App. 9. The Hospital is "Green Tree's predecessor"—and conversely, Green Tree is the Hospital's successor—in that Green Tree stepped into the Hospital's shoes and took on malpractice liability.

Green Tree also asserts the District Court incorrectly interchanged "Claim" and "Loss Event," because the Prior Acts Exclusion applies to "Claims," not "Loss Events" or "Medical Incidents." The District Court stated, "[i]f a second lawsuit is based on the same 'Medical Incident' resulting in bodily injury to the same patient, it is the same 'Loss Event' or claim." App. 11. According to Green Tree, this "blurring of terms" led the District Court to erroneously conclude the 2002 and 2019 actions comprised the same "Claim" because they relate to the same "Loss Event." Appellant's Br. 21. Green Tree's real issue, once again, is that the 2002 action was not a "Claim" because it was not filed against an "Insured." But we have already rejected this argument. The 2002 and 2019 actions arose out of the same "Medical Incident," meaning they are the same "Loss

11

Event." And, thus, they are the same "Claim" so long as they are against an "Insured" or an entity whose liability Green Tree assumed.

*     *     *

The District Court did not contravene the plain and ordinary meaning of the IBNR Policy, specifically the Prior Acts Exclusion. The IBNR Policy covers medical malpractice claims arising from the Hospital's operations before March 1, 2005. And while Green Tree is the only named "Insured" in the Policy, Green Tree stepped into CHHC's shoes and contractually assumed its indemnity obligations. Therefore, the Prior Acts Exclusion also bars previously reported suits against the Hospital or CHHC. Thus, we conclude the Prior Acts Exclusion applies, and the District Court correctly granted summary judgment for Admiral.

III.

For these reasons, we will affirm the judgment of the District Court.

12

FREEMAN, *Circuit Judge*, dissenting.

In my view, Admiral is contractually obligated to defend and indemnify Green Tree for the 2019 Anderson lawsuit; the Prior Acts Exclusion does not apply. So I would reverse the judgment of the District Court.

I.

The majority opinion outlines what everyone agrees are the key provisions of the Policy: (1) Admiral agreed to insure Green Tree for medical malpractice claims in which the alleged injury was sustained at Chestnut Hill Hospital between March 1984 and March 2005, only if the claim was first made against Green Tree and reported to Admiral on or after October 1, 2011; (2) one exception is the Prior Acts Exclusion, which excludes coverage for "any Claim that was reported to any other insurer prior to" October 1, 2011; (3) a "Claim" is defined as, *inter alia*, the filing of a lawsuit against an "Insured" or a written demand for money communicated to an "Insured"; and (4) Green Tree is the only "Insured." Maj. Op. at 3–4.

Everyone also agrees about what led to the parties' dispute about the Policy. In 2002, the Andersons filed a lawsuit against the Hospital for injuries sustained in 2001. That case was dismissed for lack of prosecution in January 2004—before Green Tree existed as an entity.

In 2005, CHHC sold the Hospital and agreed to indemnify the Hospital Purchasers as part of the Contribution and Sale Agreement ("CASA"). Green Tree was formed around that time to facilitate the transaction, and in 2008 it assumed joint and several liability with CHHC for CHHC's indemnification obligations under the CASA. In

1

October 2011, Green Tree purchased the Policy from Admiral to cover its indemnification obligations.

In 2019, the Andersons again sued the Hospital for the 2001 injury. The Hospital Purchasers sought indemnification from Green Tree.

II.

A.

Given these facts, I see no way to apply the Prior Acts Exclusion. Recall that the provision excludes coverage for "any Claim that was reported to any other insurer prior to" October 1, 2011; a "Claim" is defined as the filing of a lawsuit against or a demand for money from an "Insured"; and Green Tree is the only "Insured." Because the 2002 Anderson suit did not implicate Green Tree in any way, it does not qualify as a "Claim" under the Policy.

The majority acknowledges that "the 2002 Anderson suit may not have been against Green Tree in fact," Maj. Op. at 8, but it reads the Prior Acts Exclusion to "also bar[] previously reported suits against the Hospital or CHHC." Maj. Op. at 12. But the Prior Acts Exclusion says nothing about prior suits against the Hospital, CHHC, or any entity besides Green Tree.

The majority reasons that it must consider prior suits against the Hospital or CHHC when interpreting the Prior Acts Exclusion to account for "the parties' intent in creating" the Policy. Maj. Op. at 7. But I find no support for the proposition that the parties' intent can supersede the plain language of the contract, and the majority cites

2

none.[1]  To the contrary, under Pennsylvania law, the parties' "intent is to be inferred from the written provisions of the contract."  *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010)); *see also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) ("Where the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy." (alteration omitted) (quoting *Monti v. Rockwood Ins. Co.*, 450 A.2d 24, 25 (Pa. Super. Ct. 1982))).  There is no ambiguity in the written provisions of the Policy.  And if there were ambiguity, we would be required to resolve any doubt in Green Tree's favor.  *Post*, 691 F.3d at 517.  Instead, the majority looks beyond the plain language of the insurance policy exclusion to preclude coverage.  That contravenes Pennsylvania law that "exclusions are always strictly construed against the insurer and in favor of the insured."  *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206–07 (3d Cir. 2001) (citation omitted).

## B.

The divergent views about this matter may stem from the majority's conclusion that "Green Tree is the Hospital's successor—in that Green Tree stepped into the Hospital's shoes and took on malpractice liability."  Maj. Op. at 11; *see also id.* at 8 ("Green Tree steps into CHHC's shoes by assuming liability for suits CHHC previously covered and reported.").  But Green Tree did not assume all of the Hospital's or CHHC's

---

[1] In any event, I see nothing in the record evidencing an intent that the parties failed to memorialize in the contract.

3

medical malpractice claim liability. Rather, it assumed a specific form of potential liability, as detailed in the CASA. That is, it assumed joint and several liability with CHHC for CHHC's obligations to indemnify the Hospital Purchasers under the CASA, but only to the extent of the assets that CHHC had already provided to Green Tree or would provide to it in the future. Assumption Agreement at § 2.1.

The 2002 Anderson lawsuit was filed and dismissed before the sale effectuated by the CASA took place. The Hospital Purchasers were not defendants to the 2002 lawsuit and therefore incurred no expenses for which they could seek indemnification from CHHC. Accordingly, the 2002 Anderson lawsuit did not implicate Green Tree's obligation to indemnify the Hospital Purchasers.[2]

Of course, CHHC itself had exposure to liability in the 2002 Anderson lawsuit, but that was because it was directly sued as the then-owner of the Hospital. CHHC's exposure to liability had nothing to do with any indemnification obligations arising under the CASA, so no liability ever passed to Green Tree in connection with the 2002 lawsuit. In short, Green Tree's assumption of a specific and discrete form of liability does not provide a basis to conclude that Green Tree stepped into CHHC's shoes for all purposes.

\* \* \* \* \*

For the above reasons, I respectfully dissent.

---

[2] It is not sufficient that the 2002 Anderson lawsuit related to events that predate the 2005 sale. *See* Maj. Op. at 8 n.5. The lawsuit did not implicate CHHC's indemnification obligations, so it did not implicate Green Tree's indemnification obligations either.

4